[Cite as *State v. Powell*, 2024-Ohio-5122.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-8 |
| | : | |
| v. | : | Trial Court Case No. 23-CR-0488 |
| | : | |
| PAUL POWELL, JR. | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 25, 2024

. . . . . . . . . . .

MARY ADELINE R. LEWIS, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Appellant Paul Powell, Jr. appeals from his conviction for robbery following a jury trial in the Clark County Court of Common Pleas. In support of his appeal, Powell contends that the jury's verdict finding him guilty of felony theft (an offense which merged

into his robbery conviction at sentencing) was not supported by sufficient evidence. Powell also contends that the trial court's order for him to pay $3,500 in restitution for the victim's economic loss was not supported by sufficient evidence. In addition, Powell contends that the trial court erred by failing to make a determination on the record about whether he was entitled to any jail-time credit. The State concedes error with regard to Powell's jail-time credit argument. For the reasons outlined below, we agree that the trial court erred by failing to make a jail-time-credit determination; however, we find that both of Powell's sufficiency arguments lack merit. Therefore, the judgment of the trial court will be affirmed in part and reversed in part, and the matter will be remanded to the trial court for the purpose of holding a resentencing hearing that addresses jail-time credit.

**Facts and Course of Proceedings**

{¶ 2} On August 1, 2023, a Clark County grand jury returned an indictment charging Powell with one second-degree-felony count of robbery and one fifth-degree-felony count of theft. The charges stemmed from allegations that Powell offered to pay the $3,500 asking price for a diamond ring that was for sale on Facebook Marketplace, but that he only gave the owner of the ring an envelope containing a one-dollar bill when they met in person to complete the transaction. It was also alleged that Powell ran over the owner of the ring and the owner's niece with his vehicle while he was in the process of fleeing with the ring.

{¶ 3} Powell pled not guilty to the indicted charges and the matter proceeded to a jury trial. During trial, the State presented testimony from the owner of the ring, the

owner's niece, and the investigating police officers. The following is a summary of the evidence that was elicited at trial.

{¶ 4} The owner of the diamond ring in question purchased the ring in 2021 from JCPenney for $6,249.98. Photographs of the ring and its ring box showed price-tag stickers listing the $6,249.98 purchase price. *See* State's Ex. Nos. 3 and 4. The owner purchased the ring as an engagement ring for his wife, who died of lung cancer a year after they were married. Given his wife's death and his need to pay for medical bills, the owner of the ring asked his niece to help him sell the ring on the Internet via Facebook Marketplace.

{¶ 5} Per her uncle's request, the owner's niece took pictures of the ring in question and posted it for sale on Facebook Marketplace. Their initial asking price for the ring was $4,000; however, after three months without any serious interest in the ring, they reduced the price to $3,500. After the price had been reduced, on January 9, 2023, an individual named Jacob Jordan, later identified as Powell, sent the owner's niece a message on Facebook asking if the ring was still available. The owner's niece sent a response indicating that the ring was still available and that she would only accept an in-person, cash transaction. In response, Powell asked if he could meet her that day to purchase the ring, and the niece agreed. Powell suggested they meet outside his mother's hair salon in Springfield, Ohio.

{¶ 6} At 6:30 p.m. the same day, the owner of the ring and his niece met Powell in the parking lot of the Springfield hair salon to complete the transaction. The owner of the ring and Powell parked their vehicles in the salon's parking lot and met in the middle

of their two vehicles. Powell asked the owner of the ring whether the ring was real, and the owner responded that it was. Thereafter, Powell handed the owner an envelope and the owner handed Powell the ring.

{¶ 7} After the exchange was made, Powell took off running and went back inside his vehicle. As the owner of the ring began to open the envelope, Powell kept saying the money was "in the fold." Trial Tr. p. 149. While trying to tear the envelope open, the owner of the ring walked in front of Powell's vehicle with his niece by his side. Powell then started his vehicle, told them to "move out of the way," and began driving forward. *Id.* at 113. In doing so, Powell knocked the owner of the ring and his niece onto the hood of his vehicle. While on the hood of the vehicle, the owner of the ring got his fingers stuck in the area between the vehicle's hood and windshield wipers. As a result, the owner of the ring was dragged 200 to 300 yards down the street before his fingers came loose and he fell off the vehicle. The owner's niece, who was dragged a shorter distance, was able to free herself from the hood of Powell's vehicle before it reached the street. The envelope that Powell had given the owner of the ring fell onto the ground during the incident. After the owner was hit, he realized that there was only blank paper and a one-dollar bill inside the envelope. Both the owner of the ring and his niece sustained scrapes to their feet and hands as a result of the incident. The owner of the ring also sustained an abrasion on his stomach where the tire of Powell's vehicle had rubbed against him as he was being dragged down the street.

{¶ 8} After hearing the foregoing evidence, the jury deliberated and found Powell guilty as charged. At sentencing, the trial court determined that Powell's theft and

robbery offenses were allied offenses of similar import that merged for sentencing. In light of that decision, the State elected to have Powell sentenced for robbery. Thereafter, the trial court sentenced Powell to an indefinite term of six to nine years in prison. The trial court ordered Powell's sentence to be served consecutively to a 12-month prison term that Powell had received in Clark C.P. No. 23-CR-0461, and an eight-month prison term that Powell had received in Clark C.P. No. 23-CR-0844. The trial court also ordered Powell to pay $3,500 in restitution to the owner of the ring. Although Powell had been in jail the entire time his case was pending, the trial court did not address whether Powell was entitled to any jail-time credit at the sentencing hearing or include any reference to jail-time credit in the judgment entry.

{¶ 9} Powell now appeals from his conviction, raising two assignments of error for review.

**First Assignment of Error**

{¶ 10} Under his first assignment of error, Powell contends that the evidence was insufficient for the jury to find him guilty of felony theft in violation of R.C. 2913.02(A)(1). Upon review, we find his argument lacks merit.

{¶ 11} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2009-Ohio-525, ¶ 10 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing

the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

{¶ 12} In this case, Powell is not arguing that the State failed to present sufficient evidence of any of the essential elements of theft, i.e., that Powell knowingly obtained or exerted control over the property of another with the purpose to deprive the owner of the property without the owner's consent. *See* R.C. 2913.02(A)(1). Rather, Powell argues that the State's evidence was insufficient for the jury to find that the value of the stolen ring satisfied the $1,000 threshold for the offense to be considered a fifth-degree-felony, as R.C. 2913.02(B)(2) provides, in relevant part, the following:

> [A] violation of [R.C. 2913.02] is misdemeanor theft, a misdemeanor of the first degree. If the value of the property or services stolen is one thousand dollars or more and is less than seven thousand five hundred dollars . . . a violation of [R.C. 2913.02] is theft, a felony of the fifth degree.

{¶ 13} Powell's argument is flawed because the conviction from which he appeals was for robbery, not felony theft. "[A] 'conviction' consists of a guilty verdict *and* the imposition of a sentence or penalty." (Emphasis in original.) *State v. Whitfield*, 2010-Ohio-2, ¶ 12, citing *State v. Gapen*, 2004-Ohio-6548, ¶ 135 and *State v. McGuire,* 80 Ohio St.3d 390, 399 (1997). (Other citations omitted.) Therefore, merged counts, like Powell's felony theft offense, are not convictions. *See State v. Worley*, 2016-Ohio-2722,

¶ 23 (8th Dist.).

**{¶ 14}** " 'When a trial court dispatches with a count through merger, any error in the jury's verdict on the merged count is rendered harmless beyond a reasonable doubt.' " *State v. Stargell*, 2016-Ohio-5653, ¶ 57 (2d Dist.), quoting *State v. Wolff*, 2009-Ohio-2897, ¶ 70 (7th Dist.), citing *State v. Powell*, 49 Ohio St.3d 255, 263 (1990); *accord State v. Adkins*, 2020-Ohio-3296, ¶ 8 (2d Dist.); *State v. Rodgers*, 2023-Ohio-734, ¶ 85 (2d Dist.). Therefore, appellate courts do not review the evidence supporting the findings of guilt on merged counts. *See Worley* at ¶ 23, citing *State v. McKinney*, 2008-Ohio-6522, ¶ 39 (10th Dist.) (only reviewing the sufficiency of the evidence for the crime for which the sentence was imposed and not the counts merged into that crime); *Rogers* at ¶ 85 (explaining that this court did not need to consider all 20 counts for which the defendant was found guilty, but only those counts for which the defendant received a sentence after the counts were merged).

**{¶ 15}** Here, Powell was convicted of robbery in violation of R.C. 2911.02(A)(2), which prohibits a person from inflicting or attempting to inflict physical harm on another while "attempting or committing a theft offense or in fleeing immediately after[.]" Powell concedes, and we agree, that robbery can be established via misdemeanor-level theft, which does not require evidence of the stolen property's value. *See* R.C. 2913.02(B) and R.C. 2911.02(A). Therefore, the value of the ring in question was immaterial to Powell's robbery conviction. Because Powell is not challenging the sufficiency of the evidence supporting his robbery conviction, and because any error pertaining to Powell's merged theft offense amounts to harmless error, Powell's sufficiency of the evidence

argument lacks merit.

{¶ 16} Under this assignment of error, Powell also tangentially argues that there was insufficient evidence supporting the trial court's order for him to pay $3,500 in restitution for the victim's economic loss. Powell has waived all but plain error for appeal on that issue, as he did not challenge the amount of restitution at sentencing or request a hearing on the matter. *See State v. Donaldson*, 2023-Ohio-234, ¶ 54 (2d Dist.) (" '[a] defendant who does not dispute an amount of restitution, request a hearing, or otherwise object waives all but plain error in regards to the order of restitution.' "), quoting *State v. Snowden*, 2019-Ohio-3006, ¶ 88 (2d Dist.), citing *State v. Woods*, 2016-Ohio-1103, ¶ 12 (2d Dist.). To show plain error, Powell must demonstrate that "an error occurred, that the error was obvious, and that there is 'a reasonable probability that the error resulted in prejudice,' meaning that the error affected the outcome of the [proceeding]." (Emphasis deleted.) *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 22.

{¶ 17} With regard to restitution, the Supreme Court of Ohio has explained that:

R.C. 2929.18(A)(1) gives a sentencing court discretion to order restitution but not in an amount greater than the amount of economic loss suffered by the victim as a direct and proximate result of the commission of the offense. The court may base the amount of restitution on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information. Further, the statute mandates that the

court must conduct a hearing if the offender, victim, or survivor disputes the amount.

*State v. Lalain*, 2013-Ohio-3093, ¶ 3.

**{¶ 18}** This court has explained that: " '[T]here must be competent, credible evidence in the record to support the trial court's order of restitution "to a reasonable degree of certainty." The amount of restitution requested should, if necessary, be substantiated through documentary or testimonial evidence.' " *State v. Hess*, 2012-Ohio-961, ¶ 35 (2d Dist.), quoting *State v. Bender*, 2005-Ohio-919, ¶ 10 (2d Dist.), quoting *State v. Hooks*, 135 Ohio App.3d 746, 749 (10th Dist. 2000). "[A]s long as competent and credible evidence was presented during trial upon which a restitution order could be based, a separate restitution hearing may not be required." *State v. Lenard*, 2018-Ohio-3365, ¶ 72 (8th Dist.).

**{¶ 19}** "The testimony of a victim, if determined to be credible, is sufficient to support a restitution order; no documentation is required to substantiate the victim's testimony." *State v. Graham*, 2014-Ohio-4250, ¶ 57 (2d Dist.), citing *State v. Dolphin*, 2014-Ohio-3434 ¶ 29 (2d Dist.); *State v. McClain*, 2010-Ohio-6413, ¶ 34 (5th Dist.) ("R.C.2929.18(A)(1) allows the trial court to rely upon the amount of restitution recommended by the victim, and does not require written documentation."); *State v. Bowman*, 2009-Ohio-1281, ¶ 12 (2d Dist.) ("Documentary and/or testimonial evidence must be introduced to demonstrate the victim's economic loss.").

**{¶ 20}** Here, the owner of the ring—the victim in this case—testified that he had paid $6,249.98 for the ring in 2021 and that he had attempted to sell the ring in 2023 for

$3,500. The owner of the ring also identified photographs showing price tags on the ring's box, which listed the purchase price as $6,249.98. The testimony of the owner's niece also established that Powell had agreed to pay $3,500 for the ring. Because the trial court was free to base its order of restitution on the victim's testimony, we find no error, let alone plain error, with regard to the amount of restitution ordered.

{¶ 21} Powell's first assignment of error is overruled.

## Second Assignment of Error

{¶ 22} Under his second assignment of error, Powell contends that the trial court erred by failing to make a determination on the record about whether he was entitled to any jail-time credit. The State concedes error and we agree that the trial court erred by failing to make a jail-time-credit determination.

{¶ 23} "When a defendant is incarcerated prior to sentencing, 'he must be given credit on the sentence . . . imposed for all periods of actual confinement on that charge.' " *State v. Clark*, 2024-Ohio-751, ¶ 7 (2d Dist.), quoting *State v. Russell*, 2015-Ohio-3373, ¶ 37 (2d Dist.), citing *State v. Coyle*, 2010-Ohio-2130, ¶ 5 (2d Dist.). "It is the duty of the trial judge to determine the amount of jail-time credit to which a prisoner is entitled." *State v. Williams*, 2018-Ohio-1297, ¶ 14 (8th Dist.), citing *State ex rel. Rankin v. Ohio Adult Parole Auth.*, 2003-Ohio-2061, ¶ 7; R.C. 2929.19(B)(2)(g)(i). "[T]he trial court's obligation in calculating jail-time credit is limited to calculating the total number of days the defendant was confined prior to sentencing." *State v. Dearmond*, 2022-Ohio-3252, ¶ 13 (2d Dist.).

{¶ 24} More specifically, "Ohio Adm.Code 5120-2-04(B) provides that the trial court is required to determine 'the amount of time the offender served locally before being sentenced' and 'must make a factual determination of the number of days credit to which the offender is entitled by law and include this information within the sentencing entry[.]' " *Clark* at ¶ 7, quoting Ohio Adm.Code 5120-2-04(B).  In contrast, "it is the duty of the Ohio Department of Rehabilitation and Correction ['ODRC'] to reduce the offender's sentence 'by the number of days the offender was confined as a result of the offense, between the date of the sentencing entry and the date committed to the [ODRC.]' " *Id.*, quoting Ohio Adm.Code 5120-2-04(A); R.C. 2967.191.  As a result, the calculation of the total number of days a defendant was confined "must be present in the sentencing entry so the ODRC can properly apply credit to any prison sentence."  *State v. Gates*, 2022-Ohio-1666, ¶ 8 (8th Dist.), citing *Williams* at ¶ 14, R.C. 2929.19(B)(2)(g)(i), R.C. 2949.12, and R.C. 2967.191.

{¶ 25} Upon review, the record establishes that Powell was confined in jail during the entire pendency of his case.  Based on the aforementioned requirements, we find that the trial court was obligated to calculate Powell's jail-time credit at the time of sentencing, notify Powell of the number of days of jail-time credit that he was to receive, and memorialize that information in the judgment entry.  *See Clark* at ¶ 8.  In this case, the trial failed in all those respects.  Accordingly, Powell's argument is well taken.

{¶ 26} Powell's second assignment of error is sustained.

## Conclusion

**{¶ 27}** Having overruled Powell's first assignment of error and sustained his second assignment of error, the judgment of the trial court is affirmed in part and reversed in part, and the matter is remanded to the trial court for resentencing to address jail-time credit.

. . . . . . . . . . . . .


EPLEY, P.J. and TUCKER, J., concur.